Thomas J. Gearing, Esq. (SBN 121473)
Law Offices of Thomas J. Gearing
9000 South Las Vegas Blvd., Ste. 2060
Las Vegas, NV 89123
Tel: (702) 837-0766
Email: thomasgearing@aol.com

Attorneys for Plaintiffs ROSEMARY GEARING
as Trustee of the T.J.G. Private Annuity Trust
and In Propria Persona

**FILED**
2012 JUL -2 AM 10:28
CLERK US DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ROSEMARY GEARING as Trustee of the T.J.G. Private Annuity Trust, and THOMAS J. GEARING, individually,

Plaintiffs,

vs.

CHINA AGRITECH, INC., YU CHANG, YAU-SING TANG, GENE MICHAEL BENNETT, XIAO RONG TENG, MING FANG ZHU, ZHENG "ANNE" WANG, CHARLES LAW, LUN ZHANG DAI, HAI LING ZHANG, KABANI & COMPANY, INC., CROWE HORWATH LLP, RODMAN & RENSHAW, LLC, CAI INVESTMENT, INC., and DOES 1-100,

Defendants.

) Case No.: CV 12-5039 RGK (PJWx)
) The Honorable R. Gary Klausner
) Courtroom 850
)
)
)
) SECOND
) ~~FIRST~~ AMENDED COMPLAINT
)
)
)
)
) **JURY TRIAL**
) **DEMANDED**
)
) Notice of Removal filed: 06/08/12
)
)
)
)
)
)
)
)
)
)
)

RECEIVED
BUT
NOT FILED

JUL - 2 2012

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

1

# I. JURISDICTION AND VENUE

1. This is an action for fraud, negligent misrepresentation, negligence, unjust enrichment, and punitive damages under California State law.

2. There is no jurisdiction over the subject matter of this action as there is no federal question presented and it is lacking diversity of citizenship jurisdiction under 28 U.S.C. 1332. Plaintiffs respectfully await the Court's decision to remand to state court.

## II. PARTIES

3. PLAINTIFF Thomas J. Gearing is an individual residing in Las Vegas, Nevada, who, from his second residence at 2160 Century Park East, Los Angeles, California, 90067, conducted all buy and sell transactions at issue in this Complaint. Thomas J. Gearing purchased 35,207 shares of China Agritech, Inc.'s stock ("CAGC") on January 24, 25, and 27 of 2011 at artificially inflated prices. Upon the Discovery of Defendants' fraudulent acts on February 8, and February 9, 2011 Plaintiff Thomas J. Gearing sold 34,607 shares of CAGC stock at a loss and suffered damages as a result of the false and/or misleading and/or negligent statements and/or material omissions alleged herein. CAGC continued to vehemently deny the allegations of fraud publicly and issued another press release responding to misleading allegations on February 10, 2011. CAGC asserted, among other things, "the Company's factories are "fully operational and functional and revenues which have been reported in accordance with U.S. GAAP and audited by independent accountants are accurate." CAGC further asserted that its filings with the SEC are "accurate, correct and have been audited by independent accounting firms." CAGC further refuted the allegations stating that "the Company's factories are fully operational, functioning and none are or have been for sale", that "[a]ll of these facilities are operating normally, that "[i]n addition to the Company's independent auditors, a number of analysts, media, and professional investors

have visited the Company's production facilities, and that "the Company's Harbin facility has never been listed for sale." CAGC further confirmed that it "has the necessary licenses for the production of all of its fertilizer products" and "has obtained the necessary Formal Fertilizer Registration Certificate for all of our fertilizer products from the PRC Ministry of Agriculture. In response to the allegation that suppliers cannot be located, CAGC asserted, "the Company's suppliers are publicly disclosed and have facilities near the Company." Based on these assurances and statements, Thomas Gearing bought back 7,000 shares of CAGC in the range of $6.74 and $6.82 per share on or about March 11, 2011. Plaintiff sought to mitigate his losses previously incurred and bought back the share upon the belief that the published statements and press releases were true. On March 14, 2011, NASDAQ delisted and halted trading of CAGC stock with its share price at $6.88 per share. When the stock reopened for sale on "pink sheets" on May 20, 2011, Plaintiff Thomas Gearing sold off his 7,000 remaining shares at a loss for the price of $1.22 to $1.44 per share.

4. PLAINTIFF Rosemary Gearing, a California citizen of 26 years, residing at 2598 S. Westgate Ave., Los Angeles, California 90064, and Trustee of the Thomas J. Gearing Private Annuity Trust, also purchased 14,500 shares of CAGC stock for the price on or about March 11, 2011, based on the same reasons stated above in paragraph 4. On May 20, 2011, the Thomas J. Gearing Private Annuity Trust, now the TJG Trust, sold its 14,500 shares of CAGC stock at a loss, at the price range of $1.22 to $1.48 per share. On or about September 21, 2011, the Thomas J. Gearing Private Annuity Trust was merged with the TJG Trust, Rosemary Gearing acting as Trustee. All of the assets and claims of the Thomas J. Gearing Private Annuity Trust were transferred to the TJG Trust. Michael Gearing is no longer the Trustee; Rosemary Gearing is the Trustee of the merged trust.

5. DEFENDANT China Agritech, Inc. is a Delaware corporation with its principal place of business located at Room 3F, Building 11, Zhonghong International Business Gardens, Future Business Center, Chaoyang North Rd., Chaoyang District, Beijing, China 100024. One of China Agritech's subsidiaries, CAI Investments, Inc., maintains an office California. China Agritech purportedly manufactures and sells through its subsidiaries organic liquid fertilizers, organic compound fertilizers, and related agricultural products. (Hereafter, the company will be referred to as "Agritech" and the stock as "CAGC").

6. DEFENDANT Yu Chang ("Chang") was at all relevant times the President, Chief Executive Officer, Secretary, and Chairman of the Board of Agritech. Chang was also a CAGC shareholder at all relevant times. For example, Agritech's 2008 10-K and 2009 10-K show that Chang owned 41.96% and 40.23% of Agritech's CAGC during those years, respectively.

7. DEFENDANT Yau-Sing Tang ("Tang") was at all relevant times Chief Financial Officer and Controller of Agritech. Tang was also a CAGC shareholder at all relevant times. For example, Agritech's 2008 10-K and 2009 10-K show that Tang owned 1.04% and 0.4% of Agritech's CAGC during those years, respectively.

8. DEFENDANT Gene Michael Bennett ("Bennett") was at all relevant times a Director of Agritech and the Chairman of the Audit Committee. Bennett was also as a member of Agritech's Nominating and Governance Committee and the head of the Special Committee investigating the allegations of fraud.

9. DEFENDANT Xiao Rong Teng ("Teng") was at all relevant times, and is currently, a Director of Agritech. Teng also served as the Company's COO from February 2005 to March 2009. In addition, Teng was a substantial shareholder of the Company during all relevant time. When the Company filed its 2008 10-K and 2009 10-K, Teng owned 2.53% and 2.15% of Agritech's stock, respectively.

10. DEFENDANT Ming Fang Zhu ("Zhu") is CAGC's Chief Operating Officer from March 2009 to the present. From April 2007 to March 2009, Zhu served as President of Beijing Agritech Fertilizer Co, Ltd., s subsidiary of Agritech.

11. DEFENDANT Lun Zhang Dai ("Dai") was and is a director of Agritech at all relevant times. Dai also serves as a member of the Company's Audit Committee, Compensation Committed and Nominating and Governance Committee.

12. DEFENDANT Hai Lin Zhang ("Zhang") was and is a director of Agritech from October 2008. Zhang also serves as a member of the Company's Audit Committee, Compensation Committee and Nominating and Governance Committee.

13. DEFENDANT Zheng "Anne" Wang ("Wang") was a director of Agritech from December 2009. Wang has been Vice President of Carlyle Asia Growth Capital, a subsidiary of the Carlyle Group ("Carlyle"), since December 2007. According to the Company's SEC filings, Wang was Carlyle's designee to Agritech's board and was determined by the Board of Directors not to be an "independent director."

14. DEFENDANTs Chang, Tang, Bennett, Teng, Zhu, Dai, Zhang, Wang are collectively referred to hereinafter as the "individual defendants."

15. DEFENDANT Rodman & Renshaw LLC is a broker-dealer that served as underwriter of Agritech's secondary public offering ("SPO") of CAGC stock. The SPO was complete on or about May 4, 2010. Rodman & Renshaw, as underwriter, investigated Agritech and its offering of CAGC stock and ensured the accuracy of statements and facts contained in the registration statement and prospectus for the SPO. Rodman & Renshaw provided accounting, consulting, counseling, and auditing services for Agritech during the fiscal year 2010, the year of the SPO.

16. DEFENDANT Crowe Horwath LLP is a California is a limited liability partnership with its principal place of business in California. Crowe Horwath served as Agritech's accounting consultant and auditor during fiscal years 2008, 2009, and 2010. Crowe Horwath ensured the accuracy of statements and facts contained in the registration statement and prospectus for the SPO. Crowe Horwath also consented to the inclusion of its certification of Agritech's financial statements in its registration statement and prospectus. Crowe Horwath provided accounting, consulting, counseling, and auditing services for Agritech during the time it was engaged as Agritech's accounting consultant and auditor.

17. DEFENDANT Kabani & Company, Inc., ("Kabani & Co.") is a Los Angeles-based accountancy and a California corporation with its principal place of business in California. Kabani & Co. provided accounting, consulting, counseling, and auditing services for Agritech during the fiscal year 2007. Kabani & Co. consented to the inclusion of its certification of Agritech's financial statements in its registration statement and prospectus.

18. DEFENDANT CAI Investments, Inc., ("CAI") is a subsidiary of Agritech, incorporated in the state of California, with its principal place of business in California. It holds 100% of Agritech Fertilizer Limited and 75% of Xinjuang Agritech Agricultural Development Co. Ltd.

## III. FACTS

### A. China Agritech, Inc.

19. Agritech's business operations are primarily conducted through its direct and indirect subsidiaries in the People's Republic of China ("PRC"). It purports to manufacture and sell organic compound fertilizers and related agricultural products.

20. During all relevant times, Agritech and its officers and directors engaged in a wide-ranging fraud including:

a. Overstating revenue by at least 900% for fiscal year 2009 and 1,444% for fiscal year 2008.

b. Reporting $76.13 million of revenue in 2009 and $45.24 million in 2008, when the true revenue figures were not more than $7.6 million in 2009 and $3.0 million in 2008.

c. Overstating net income by at least 536% for fiscal 2009. Reporting a profit for fiscal year 2008, while the Agritech was in fact losing money.

d. Reporting $6.17 million of net income in 2009 and $9.83 million in 2008, when the true net income figures were not more than $0.97 million in 2009 and a net loss of ($1.88) million in 2008.

e. Failing to disclose material related party transactions – Agritech signed a contract effective December 8, 2008 to pay a company controlled by its CEO Chang approximately $4.0 million for raw materials.

f. Agritech has maintained two material different sets of financial accounts, one for investors that it files with the SEC and for its true business operations that it provides to the Chinese government showing revenue and income only a 1/10 of that reported to the SEC and investors.

g. Agritech falsely represented through its press releases, annual and quarterly reports, 424B5 prospectus, and other publicly disseminated documents that all of their factories were fully functional and producing substantial quantities of agricultural products, when in fact many of Agritech's factories and facilities were closed, non-functional, or minimally operational and using manual labor, producing only small quantities of agricultural products, which does not support its income reflected in press releases, annual and quarterly reports, prospectus, and other publicly disseminated documents.

21. During all relevant times when Agritech was issuing false and misleading financial statements, Defendants Teng, Tang and Zhu sold over $3.0 million of CAGC stock and Agritech sold over $20.0 million in a public offering.

22. On April 18, 2008, Agritech dismissed Kabani & Co. as its accounting firm and engaged Grobstein, Horwath & Co., which then merged with and into Crowe Horwath.

23. In November of 2010, Agritech dismissed Crowe Horwath and engaged Ernst & Young Hua Ming (E&Y) as its accounting firm.

24. On March 13, 2011, CAGC announced formation of a Special Committee of its Board of Directors ("the Special Committee") to investigate allegations of fraud by third parties.

25. Then on March 14, 2011, E&Y stated, with regard to their engagement with Agritech, that *they are not able to rely on management's representation any longer*.

26. Also on March 14, 2011 Agritech dismissed E&Y, citing reasons disclosed in the 8-K filed March 13, 2011:

> December 15, 2010, E&Y provided a letter to the Audit Committee of the Board of Directors of the Company (the "Audit Committee") describing certain matters that, if not appropriately addressed in a timely manner, may result in audit adjustments, significant deficiencies or material weaknesses and/or delays in meeting the 10-K filing deadline. ... On March 8, 2011, E&Y informed the Audit Committee that it had encountered additional issues and concerns that, in E&Y's view, required additional information and procedures, **including the initiation of an independent investigation, in order to verify certain transactions and balances recorded on the Company's financial statements and records for the year ended December 31, 2010. E&Y also orally advised the Audit Committee that it may not be able to rely on management's representations based on the issues identified.**
>
> **E&Y informed the Company that the issues identified in performing their audit may, if further investigated, have adverse implications for the financial statements covering the three quarterly reports filed by the**

Company on Form 10-Q during 2010, and advised the Audit Committee to inform the predecessor auditors of the issues identified, so that they can assess the impact on prior financial reports."

[Emphasis Added]

27. Thus, Agritech had concealed that E &Y had identified serious problems with its financial statements as early as December 15, 2010, as well as the fact that E&Y had informed Agritech that an internal investigation was necessary.

28. The same day E & Y's role as auditor was terminated, NASDAQ delisted and halted trading in Agritech's CAGC stock "in order to protect the public interest."

29. Since then two of Agritech's directors (Bennett and Wang) have resigned.

30. Agritech's shares of CAGC stock have dropped from $10.78 per share to $0.45 per share.

31. As of the date of this Complaint Agritech still has not filed with the SEC its annual report on Form 10-K for 2011 or 2012.

32. Agritech is currently under investigation by the SEC.

**B. Agritech's Audit Committee**

33. According to Agritech's 2009 10-K, the audit committee was comprised of Defendant Bennett, Dai and Zhang, with Bennett serving as the chairman. Bennett was also determined by the board of directors to be the necessary audit committee member that qualifies as an "audit committee financial expert".

34. Defendants Bennett, Dai and Zhang, as members of the audit committee, had an affirmative duty of oversight and responsibility for the integrity of CAGC's financial reporting.

35. Agritech's audit committee charter bestows upon members of the audit committee certain responsibilities, including but not limited to:

   a. Review and discuss with management and the independent auditors, before filing with the Securities and Exchange Commission, the annual audited financial statements and quarterly financial statements. Review

1    with the independent auditors and management the results of the audit
2    and the Company's specific disclosures under "Management's
3    Discussion and Analysis of Financial Condition and Results of
4    Operations – discuss matters required to be communicated to Audit
5    Committee in accordance with Statement on Auditing Standards No.
6    61."; and
7    b. With the independent auditors, management and the internal auditors,
8    periodically review and discuss significant (a) financial reporting issues
9    and practices, and critical accounting policies and estimates, (b) issues
10   regarding accounting principles and financial statement presentation
11   (including any significant changes in the Company's selection or
12   application of accounting principles), and (c) issues as to the adequacy of
13   the Company's internal control systems and compliance with applicable
14   laws and regulations. Assess management's attitude toward internal
15   controls, the process for establishing and monitoring internal control
16   systems and any special audit steps adopted in light of material control
17   deficiencies.

18   **C.  Agritech's Code of Ethics and Related-Party Transactions**
19   36. Agritech's Code of Ethics prohibits self-dealing and related-party transactions
20   such as those engaged in by defendant CEO Chang.
21   37. The code section "Honest and Ethical Conduct" provides:
22   Senior Financial Officers will exhibit and promote the highest standards
23   of honest and ethical conduct through the establishment and operation of
24   policies and procedures that . . . ***Prohibit and eliminate the appearance***
25   ***or occurrence of conflicts between what is in the best interest of the***
26   ***enterprise and what could result in material personal gain for a***
27   ***member of the financial organization, including Senior Financial***
28   ***Officers***.

[Emphasis Added]

38. Contrary to the "Honest and Ethical Conduct" described above, Agritech's 2009 10-K concealed related party transactions with defendant CEO Chang.

39. At all relevant times Chang, as Agritech's CEO, President, Secretary, and Chairman, also owned 90% of Shenzen Hongchou Technology Company Ltd. ("Shenzen"), which is Agritech's third largest supplier.

40. Chang claims that in January of 2011 he transferred all of his CAGC stock to on Haibo Li, who is an immediate relative to the owner of Harbin Hai Heng Chemical Distribution Co. Harbin Hai Heng is *also* a major supplier of Agritech's raw materials.

41. Generally Accepted Accounting Principles ("GAAP"), Statement of Financial Accounting Standards ("SFAS")[1] and SEC regulations require Agritech to disclose all material related-party transactions.[2]

**D.  Agritech's Court-Ordered Annual Meeting**

42. Recently, the Delaware Court of Chancery ordered Agritech to hold its annual shareholders meeting on June 25, 2012, at 10:00 A.M, U.S. Eastern Daylight Time, at the DoubleTree Hotel, 700 N. King Street, Wilmington, Delaware.

43. Agritech board members were required to attend this meeting.  In addition, Defendants Chang, Teng, and Dai, each of whom is a current director of the Agritech, were set to stand for election to the Agritech's board of directors at the annual meeting.

44. Plaintiffs hired an investigator to observe the designated location for the board meeting the day prior to the meeting, during the meeting, and after the meeting.

---

[1]  Statement of Financial Accounting Standards No. 57 and No. 16 provide that a public company's "[f]inancial statements shall include disclosures of material related party transactions." SFAS No. 57 ¶ 2; 850-10-50-1.

[2] "Related party transactions" include those between "an enterprise and  its principal owners, management, or members of their immediate families" and those between a company and its "affiliates."  SFAS No. 57 ¶ 1; 850-10-05-3. "Affiliate" includes any company that is under common control or management with the public company. SFAS No. 57 ¶ 24(a)-(b); 850-10-20.

1    Plaintiffs' investigator observed that there was only one door to enter the room
2    in which the meeting was to be held.
3    45. At all relevant hours leading up to, during, and after the meeting, Plaintiffs'
4        investigator waited by this door and observed that none of Agritech's officers,
5        directors, or board members entered or exited the room.  On behalf of Agritech,
6        only counsel Aronson was present, accompanied by two Asian women who
7        were not officers, directors, or board members.
8    46. The person who was monitoring and controlling entrance to the meeting told
9        Plaintiffs' investigator that none of Agritech's officers, directors, or board
10       members were present at the meeting.
11   47. Plaintiffs' investigator observed that the meeting lasted 26 minutes.
12   48. Agritech failed to hold a properly attended annual shareholders meeting.
13       **F.  The Independent Auditors, Accountants, Consultants, Underwriters,**
14       **and Subsidiaries of Agritech**
15   49. **Defendant Crowe Horwath** was retained by Agritech for the years 2008,
16       2009, and 2010.
17   50. Defendant Crowe Horwath reviewed, certified, prepared, and directed the
18       preparation of Agritech's Annual 10-K and financial records for the year 2008
19       for the period ending on 12/31/2008, filed on 03/31/2009, and for the year 2009
20       for the period ending 12/31/2009, filed on 04/01/2010, and the financial
21       information that was used and included in Agritech's press releases and other
22       publicly disseminated publications.  Crowe Horwath also performed an audit of
23       said records and information.
24   51. Defendant Crowe Horwath did so knowing the financial information
25       provided them by Agritech was false, or alternatively, failing to reasonably
26       request, ask and demand to review China Agritech's full and complete financial
27       records, including the filing they made with the Chinese State Administration
28

1    of Taxation, the State Administration of Industry and Commerce, and the

2    financial records used in preparation of those filings with Chinese authorities.

3    52. Defendant Crowe Horwath failed to reasonably verify the accuracy and

4    veracity of the consolidated financial statements of Agritech and its subsidiaries

5    by:

6        a.  failing to conduct a reasonable audit of financial statements,

7        b.  failing to exercise reasonable care in obtaining Agritech's financial

8            information, and

9        c.  failing to exercise due diligence to obtain reasonable assurance that the

10           consolidated financial statements of Agritech and its subsidiaries were

11           free of material misstatements and omissions.[3]

12   53. The audit report and opinion of Crowe Horwath was intended to influence the

13   Plaintiffs, as investors, to the extent that it was included in Agritech's 10-K,

14   registration, and prospectus, all of which are tools an investor uses to assess the

15   quality and risk of a contemplated investment.

16   54. Defendant Crowe Horwath was substantially certain that Plaintiffs, as

17   investors, would rely on the representations contained in the aforementioned

18   audit report and opinion regarding China Agritech's financial condition.

19   Moreover, there is a strong likelihood that any reasonable investor, while

20   contemplating an investment, would attach great importance to the auditor's

21   report and opinion of the financial and operational conditions of a reporting

22   company.[4]

23   55. Plaintiffs did in fact read and rely on the audit report and opinion, annual and

24   quarterly reports, press releases and other publicly disseminated publications.

25   _____

26   [3] This standard is promulgated by the Public Company Accounting Oversight Board.
     [4] This is especially true with regard to the prospectus, which is distributed to potential investors

27   and provides material information about a reporting company's mutual funds, stocks and bonds,
     a description of the company's business, officer and director profiles, any current or pending

28   litigation, and other material information which investors would be careless *not* to rely on when
     contemplating future investments.

56. Plaintiffs were induced to purchase said shares of stock based on Defendant Crowe Horwath's negligent misrepresentation that Agritech's financial information was presented accurately and fairly.

57. Specifically, Crowe Horwath negligently misrepresented Agritech's financial condition to potential investors by:

    a. failing to exercise reasonable care in issuing their audit report and opinion, knowing that it would be distributed, disseminated, or otherwise made available to the investing public

    b. issuing the opinion that Agritech's consolidated financial statements are presented "fairly, in all material respects, [as to] the consolidated financial condition of the Company"[5]

    c. consenting to the inclusion of that opinion in Agritech's 10-K report for fiscal years 2008 and 2009[6]

    d. consenting to the inclusion of that opinion in Agritech's registration statement and prospectus

58. Essentially, Crowe Horwath certified and opined that CAGC's financial statements for 2008 and 2009 that were included in the Registration Statement and Prospectus were accurate and were prepared in accordance with GAAP, when in truth they were not.

59. As a result of Crowe Horwath's negligent misrepresentations, Plaintiffs suffered damages. Specifically, Plaintiffs were induced to purchase said shares of stock based on Defendant Crowe Horwath's negligent misrepresentations in its audit report and opinion, Agritech's annual and quarterly reports, press releases and other publicly disseminated publications, which Plaintiffs read and relied upon.

---

[5] The full text of Crowe Horwath's opinion is in "Report of Independent Registered Public Accounting Firm"
[6] The full text of Crowe Horwath's consent is in "Consent of Independent Registered Public Accounting Firm"

60. **Defendant Kabani & Co.** was retained by Agritech for for the years 2007 and 2008.

61. Defendant Kabani & Company, Inc. audited, reviewed, prepared, certified China Agritech, Inc.'s Annual Report and financial records for the year 2007 for the period ending on 12/31/2007, filed on 03/28/2008, and signed off on the Annual Report for the period ending on 12/31/2008, filed on 03/31/2009.

62. Kabani & Co. did so knowing the financial information provided them by Agritech was false, or alternatively, failing to reasonably request, ask and demand to review China Agritech's full and complete financial records, including the filing they made with the Chinese State Administration of Taxation and State Administration of Industry and Commerce.

63. Kabani & Co. failed to reasonably verify the accuracy and veracity of the consolidated financial statements of Agritech and its subsidiaries by:

    a. failing to conduct a reasonable audit of financial statements,

    b. failing to exercise reasonable care in obtaining Agritech's financial information, and

    c. failing to exercise due diligence to obtain reasonable assurance that the consolidated financial statements of Agritech and its subsidiaries were free of material misstatements and omissions.

64. Kabani & Co. negligently misrepresented Agritech's financial condition to potential investors by:

    a. failing to exercise reasonable care in issuing their audit report and opinion, knowing that it would be distributed, disseminated, or otherwise made available to the investing public

    b. issuing the opinion that Agritech's consolidated financial statements are presented "fairly, in all material respects, [as to] the consolidated financial condition of the Company"

   c. consenting to the inclusion of that opinion in Agritech's 10-K report for
    fiscal years 2007 and 2008

   d. consenting to the inclusion of that opinion in Agritech's registration
    statement and prospectus

65. As a result, Plaintiffs were induced to purchase said shares of stock based on
Defendant Kabani & Co.'s misrepresentations in its audit report and opinion,
Agritech's annual and quarterly reports, press releases and other publicly
disseminated publications. [7]

66. **Defendant Rodman & Renshaw**, as underwriter of Agritech's May 2010
SPO, investigated Agritech and its offering of CAGC stock and ensured the
accuracy of statements and facts contained in the registration statement and
prospectus. Rodman & Renshaw also provided accounting, consulting,
counseling, and auditing services for Agritech in connection with the SPO.

67. Rodman & Renshaw failed to conduct due diligence for the SPO. Rodman
Renshaw's failure to conduct due diligence amounted to misrepresentations and
omissions of material facts, by Rodman & Renshaw, in and in connection with
Agritech's registration statement and prospectus.

68. As a result, Plaintiffs were aware of and relied upon the false representations
made and disseminated by Rodman, whereby Plaintiffs were induced to
purchase said shares of stock based on Rodman & Renshaw's
misrepresentations.

69. **Defendant CAI**, a wholly owned subsidiary of Agritech, which holds 100% of
Agritech Fertilizer Limited and 75% of Xinjuang Agritech Agricultural
Development Co. Ltd. ("Xinjuang"), falsely reported to China Agritech, their
accountants, auditors, underwriters and consultants, their income, the income of

---

[7] Plaintiffs studied Agritech's statements and reports not only for the years prior and concurrent
to the year of contemplated investment, but also those of 2007 and 2008, which were prepared by
and supported by the opinion of Kabani & Co.

Xinjuang, and the income of Agritech Fertilizer Limited for the years 2007, 2008, 2009, and 2010.

70. Furthermore, CAI falsely reported that CAI and Xinjuang were fully functional and producing substantial quantities of agricultural products, when in fact many of Agritech's factories and facilities were closed, non-functional, or minimally operational and using manual labor, producing only small quantities of agricultural products, which does not support its income reflected in press releases, annual and quarterly reports, prospectus, and other publicly disseminated documents.

71. As a result, Plaintiffs were induced to purchase said shares of stock based on CAI's misrepresentations, which were published through Agritech.

## IV.  RESPONDEAT SUPERIOR LIABILITY

72. Agritech is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency, as all of the wrongful acts complained of herein were carried out within the scope of their employment and with authorization.

73. The knowing and willful conduct of the Individual Defendants and employees and agents of the Agritech are imputed to Agritech under *respondeat superior* and agency principles.

## VII.  PERSONAL LIABILITY OF INDIVIDUAL DEFENDANTS

74. The Individual Defendants had great financial interest in and control over Agritech and its corporate affairs.

75. The Individual Defendants used the Agritech corporation to advance personal purposes adverse to the interests of the Plaintiffs, investors, and shareholders.

76. The Individual Defendants, having a high degree of control over the Agritech corporation, failed to follow proper procedure, including but not limited to:

    a.  failing to hold annual meetings,
    b.  failing to timely file their Annual Reports,

    c.  failing to maintain proper financial records,

    d.  commingling corporate finances with that of its shareholders, and

    e.  self-dealing and failing to disclose related-party transactions

77. The Individual Defendants falsely reported to Agritech, its accountants, auditors, underwriters and consultants, Agritech's income and the income of all Agritech subsidiaries for the years 2007, 2008, 2009, and 2010.

78. The Individual Defendants falsely reported that all subsidiaries of Agritech were fully functional and producing substantial quantities of agricultural products, when in fact many of Agritech's factories and facilities were closed, non-functional, or minimally operational and using manual labor, producing only small quantities of agricultural products, which does not support its income reflected in press releases, annual and quarterly reports, prospectus, and other publicly disseminated documents.

## IV. <u>STATUTE OF LIMITATIONS</u>

79. This action is brought within three years of the date of discovery by Plaintiffs,[8] which occurred on and after February 8, 2011, by reading and reviewing information that was published concerning Agritech's fraudulent financial reports and statements regarding production status of their facilities.

## V. <u>FIRST CAUSE OF ACTION</u>

### <u>Fraud by Intentional Misrepresentation</u>

**(Against Agritech, Individual Defendants, Crowe Horwath, Rodman Renshaw, Kabani & Co., and CAI)**

80. Plaintiffs incorporate by reference paragraphs 1 through 79 as fully alleged herein.

81. Every representation made by the above listed Defendants, as alleged in paragraphs 1 through 80, was false.

---

[8] Cal. Code Civ. Proc. § 338(d)

82. Said false representations were known by Defendants to be false at the time they were made.

83. Said false representations were made with the intent to deceive and defraud the Plaintiffs, the shareholders, and the investing public.

84. Plaintiffs actually read and justifiably relied on said false representations and suffered damages as a direct and proximate result of said false representations in an amount according to proof.

## VI. **SECOND CAUSE OF ACTION**

### **Fraud by Suppression of True Facts**

**(Against Agritech, Individual Defendants, Crowe Horwath, Rodman Renshaw, Kabani & Co., and CAI)**

85. Plaintiffs incorporate by reference paragraphs 1 through 84 as fully alleged herein.

86. All above listed Defendants, as alleged in paragraphs 1 through 85, suppressed and actively concealed true and material facts.

87. Agritech and the Individual Defendants had specific knowledge of the true facts.

88. At all relevant times, the above listed Defendants were legally obligated to disclose the facts that were suppressed and concealed.

89. Said suppression and concealment by the Defendants was committed with the intent to deceive and defraud the Plaintiffs, shareholders, and the investing public.

90. Plaintiffs actually and justifiably relied on the state of the facts as they were given and on the absence of the facts suppressed and concealed by the Defendants.

91. Plaintiffs were damaged by said suppression and concealment of facts in an amount according to proof.

## VII.  THIRD CAUSE OF ACTION

### Negligent Misrepresentation

**(Against Agritech, Individual Defendants, Crowe Horwath, Rodman Renshaw, Kabani & Co., and CAI)**

92. Plaintiffs incorporate by reference paragraphs 1 through 91 as fully alleged herein.

93. Every representation made by the above listed Defendants, as alleged in paragraphs 1 through 92, was false.

94. At the time the Defendants made said false representations, they had no reasonable grounds for believing them to be true.

95. At the time the Defendants made said false representations, they implied having knowledge of the true facts when in fact they were ignorant of the true facts.

96. Said false representations were made with careless and reckless disregard for the truth.

97. Said false representations were made with the intent to induce the Plaintiffs, shareholders, and the investing public to rely on said false representations.

98. All above mentioned Defendants were aware that the that the financial reports containing the false representations made by the Defendants were to be used for the particular purpose in the furtherance of which a known party was intended to rely, that purpose being to attract potential investors to invest in CAGC stock.

99. Plaintiffs actually and justifiably relied on said false representations and as a result Plaintiffs suffered damages in an amount according to proof.

## VIII.  FOURTH CAUSE OF ACTION

### Negligence

**(Against Agritech, Individual Defendants, Crowe Horwath, Rodman Renshaw, Kabani & Co., and CAI)**

100.   Plaintiffs incorporate by reference paragraphs 1 through 99 as fully alleged herein.

101.   All the above listed Defendants owed the Plaintiffs a duty of reasonable care.

102.   All the above listed Defendants failed to act with reasonable care when they committed the acts, omissions, and false representations alleged in paragraphs 1 through 100.

103.   As a direct and proximate result of Defendants' failure to act with reasonable care, the Plaintiff suffered damages in an amount according to proof.

### IX.  FIFTH CAUSE OF ACTION

### Unjust Enrichment

### (Against Agritech, Individual Defendants, and CAI)

104.   Plaintiffs incorporate by reference paragraphs 1 through 104 as fully alleged herein.

105.   Agritech, Individual Defendants, and CAI became unjustly enriched when they engaged in the fraudulent conduct described above, as they were holders of CAGC stock who sold their shares at artificially inflated prices, thereby becoming unjustly enriched.

106.   Plaintiffs together have lost $213,000 to the Defendants for shares of CAGC. Defendants have had use and enjoyment of this payment.

107.   Agritech, Individual Defendants, and CAI have had the use and enjoyment the proceeds from the sale of CAGC stock at artificially inflated prices, which constitutes an unjust enrichment of Defendants at Plaintiff's expense.

108.   As a result of the unjust enrichment of Defendant, Plaintiff has been damaged in an amount of $213,000.

109.   Plaintiffs pray the return of the $213,000 they lost.

110.   Plaintiffs pray additionally for rescission of the transaction whereby they purchased shares of CAGC stock at fraudulently inflated prices.

## X. PUNITIVE DAMAGES

111. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above and further alleges that the **Individual Defendants**, as officers, directors, and managing agents committed the acts, omissions, misrepresentations, and concealment of facts alleged in this Complaint with malice, oppression, and fraud, because they committed all alleged acts with the intention to cause injury the Plaintiffs and with willful and conscious disregard for the rights of the Plaintiffs. Therefore, Plaintiffs request punitive damages in the amount of $3,000,000.

112. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above and further alleges that **Defendant Agritech's** committed those acts, omissions, misrepresentations, and concealment of facts alleged in this Complaint with malice, oppression, and fraud, because the acts committed were done by Agritech's officers, directors, and managing agents. Furthermore, the officers, directors and managing agents knew of their employees, agents, consultants, accountants, auditors conduct constituting malice, oppression and fraud and Agritech adopted and approved that conduct by actually reading, reviewing, and approving of the false information provided that was to be publicly disseminated to the investing public. Furthermore, when the officers, directors, and managing agents discovered the fraudulent acts of employees, agents, consultants, accountants, auditors conduct constituting malice, oppression and fraud, they failed to terminate, discipline or punish those involved in said acts. Therefore, Plaintiffs request punitive damages in the amount of $3,000,000.

113. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above and further alleges that **Defendant Crowe Horwath's** acts, omissions, misrepresentations, and concealment of facts alleged in this Complaint were committed with malice, oppression, and fraud,

1    because the acts committed were done by Crowe Horwath's officers, directors,
2    and managing agents. Furthermore, the officers, directors and managing agents
3    knew of their employees, agents, consultants, accountants, auditors conduct
4    constituting malice, oppression and fraud and Crowe Horwath adopted and
5    approved that conduct by actually reading, reviewing, and approving of the
6    false information provided that was to be publicly disseminated to the investing
7    public.   Furthermore, when the officers, directors, and managing agents
8    discovered the fraudulent acts of employees, agents, consultants, accountants,
9    auditors conduct constituting malice, oppression and fraud, they failed to
10   terminate, discipline or punish those involved in said acts.  Therefore, Plaintiffs
11   request punitive damages in the amount of $3,000,000.

12   114.   Plaintiffs re-allege and incorporate herein by reference each and every
13   allegation set forth above and further alleges that **Defendant Kabani & Co.'s**
14   acts, omissions, misrepresentations, and concealment of facts alleged in this
15   Complaint were committed with malice, oppression, and fraud, because the acts
16   committed were done by Kabani and Co.'s officers, directors, and managing
17   agents. Furthermore, the officers, directors and managing agents knew of their
18   employees, agents, consultants, accountants, auditors conduct constituting
19   malice, oppression and fraud and Kabani & Co. adopted and approved that
20   conduct by actually reading, reviewing, and approving of the false information
21   provided that was to be publicly disseminated to the investing public.
22   Furthermore, when the officers, directors, and managing agents discovered the
23   fraudulent acts of employees, agents, consultants, accountants, and auditors
24   conduct constituting malice, oppression and fraud, they failed to terminate,
25   discipline or punish those involved in said acts.  Therefore, Plaintiffs request
26   punitive damages in the amount of $3,000,000.

27   115.   Plaintiffs re-allege and incorporate herein by reference each and every
28   allegation set forth above and further alleges that **Defendant Rodman &**

1      **Renshaw's** acts, omissions, misrepresentations, and concealment of facts

2      alleged in this Complaint were committed malice, oppression, and fraud,

3      because the acts committed were done by Rodman & Renshaw's officers,

4      directors, and managing agents. Furthermore, the officers, directors and

5      managing agents knew of their employees, agents, consultants, accountants,

6      auditors conduct constituting malice, oppression and fraud and Rodman &

7      Renshaw adopted and approved that conduct by actually reading, reviewing,

8      and approving of the false information provided that was to be publicly

9      disseminated to the investing public.  Furthermore, when the officers,

10      directors, and managing agents discovered the fraudulent acts of employees,

11      agents, consultants, accountants, and  auditors conduct constituting malice,

12      oppression and fraud, they failed to terminate, discipline or punish those

13      involved in said acts.  Therefore, Plaintiffs request punitive damages in the

14      amount of $3,000,000.

15   116.   Plaintiffs re-allege and incorporate herein by reference each and every

16      allegation set forth above and further alleges that **Defendant CAI**

17      **Investments, Inc.'s** acts, omissions, misrepresentations, and concealment of

18      facts alleged in this Complaint were committed with malice, oppression, and

19      fraud, because the acts committed were done by CAI's officers, directors, and

20      managing agents. Furthermore, the officers, directors and managing agents

21      knew of their employees, agents, consultants, accountants, auditors conduct

22      constituting malice, oppression and fraud and CAI adopted and approved that

23      conduct by actually reading, reviewing, and approving of the false information

24      provided that was to be publicly disseminated to the investing public.

25      Furthermore, when the officers, directors, and managing agents discovered the

26      fraudulent acts of employees, agents, consultants, accountants, and auditors

27      conduct constituting malice, oppression and fraud, they failed to terminate,

28

1    discipline or punish those involved in said acts.  Therefore, Plaintiffs request

2    punitive damages in the amount of $3,000,00.

3    **<u>WHEREFORE, Plaintiff prays for judgment against Defendant as follows</u>**:

4    1.  For an award of compensatory and punitive damages alleged herein, in amounts

5    according to proof,

6    2.  For an award of prejudgment interest, and

7    3.  For an award of the costs.

8    <center>**<u>JURY TRIAL DEMANDED</u>**</center>

9    Plaintiffs hereby demand a trial by jury.

10   DATED:  July 2, 2012                    Law Offices of Thomas J. Gearing

11

12                                           /s/  Thomas Gearing

13                                           By:_____
                                             Attorneys for Plaintiffs ROSEMARY
14                                           GEARING as Trustee of the T.J.G.
                                             Private Annuity Trust, and In Propria
15                                           Persona

16

17

18

19

20

21

22

23

24

25

26

27

28

<center>25</center>
<center>FIRST AMENDED COMPLAINT</center>